# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ALFRED E. HALL, JR., <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C15-15-CJW <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Alfred E. Hall, Jr., seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Social Security disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Plaintiff contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision is affirmed.

## I.  BACKGROUND

Plaintiff was born in 1965, completed eleven years of schooling, and did not attend special education. AR 326. He has previously worked as an automobile detailer. The Administrative Law Judge (ALJ) determined that plaintiff was not capable of performing this past work, but was capable of performing other work in the national economy such as document preparer, addresser, and ticket counter. AR 151-52.

Plaintiff filed his application for DIB on September 25, 2012, alleging a disability onset date of April 3, 2012, the day he was terminated from his job as an automobile detailer. AR 142, 297. He contends that he is disabled due to morbid obesity,

degenerative joint disease of the knees, and anxiety. AR 144. Plaintiff's claims were denied initially and on reconsideration. AR 231, 237. He then requested a hearing before an ALJ. ALJ David G. Buell conducted a hearing on March 5, 2014 (the Hearing) (AR 158), and issued a decision denying plaintiff's claim on April 22, 2014. AR 139.

Plaintiff sought review by the Appeals Council, which denied review on December 19, 2014 (AR 1), leaving the ALJ's decision as the final decision of the Commissioner. On February 17, 2015, plaintiff filed a complaint (Doc. 3) in this court seeking review of the Commissioner's decision. On March 31, 2015, with the consent of the parties (Doc. 6), the Honorable Linda R. Reade, Chief Judge, transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. The parties have now briefed the issues, and the matter is fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity.

If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the

claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. ALJ'S FINDINGS

The ALJ made the following findings:

 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017 (Ex. 4D/1).

 2. The claimant has not engaged in substantial gainful activity since April 3, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

 3. The claimant has the following severe impairments: degenerative joint disease of the knees, morbid obesity, and anxiety (20 CFR 404.1520(c).

 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) except the claimant can only occasionally stoop, crouch, kneel and crawl, but cannot climb ladders, ropes and scaffolds. The claimant needs a work environment where he is not required to work at unprotected heights or near dangerous, unguarded moving machinery where he could lose his balance or fall and could be seriously injured. The claimant is limited to performing only simple, routine and repetitive work that does not require close attention to detail; does not require any significant judgment on the job because the work tasks are unchanged over time; where no new circumstances pop up requiring the claimant to notice and respond; and there is not a lot of judgment needed on the job. The claimant requires work where all tasks that would be assigned to him could be performed successfully without any interaction

with the public. The claimant requires the freedom to stand for one minute every hour near his station during which he would not be productive.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 16, 1965, and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 3, 2012, through the date of this decision (20 CFR 404.1520(g)).

AR 144-153.

## IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit

explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v.*

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Hall argues the ALJ's decision is flawed for four reasons:

1. The ALJ erred in failing to find plaintiff's rotator cuff tendonitis, left impingement syndrome, and other conditions were severe.

2. The ALJ failed to properly consider plaintiff's severe impairment of obesity with all his impairments as per SSR 02-1P.

3. The ALJ improperly rejected all medical professionals' opinions regarding physical impairments.

4. The ALJ failed to properly evaluate plaintiff's subjective allegations.

The court addresses each argument separately.

### A. RFC Determination - Applicable Standards

A claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). A claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the plaintiff's "ability to function in the

8

workplace." *Lewis*, 353 F.3d at 646. At Step Four, a claimant has the burden to prove his RFC, and the ALJ determines the RFC based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

### *1. The ALJ Properly Found at Least One Severe Impairment; Not Finding More was Harmless.*

The ALJ found plaintiff had severe impairments of degenerative joint disease of the knees, morbid obesity, and anxiety. Once the ALJ concluded at Step Two that plaintiff had "severe" impairments, he then proceeded to evaluate plaintiff's claim through the remaining steps of the sequential evaluation process. At Step Two, a claimant must only show "a severe" impairment—that is, one severe impairment—in order to avoid a denial of benefits. 20 C.F.R. § 404.1520(a)(4)(ii). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at Step Two but must proceed to the next step. *Id.* Accordingly, the failure to find an additional particular impairment severe at Step Two is not reversible error as long as the ALJ finds that at least one impairment is severe. *Id.* Similarly, any alleged error by the ALJ in not considering the combined effect of all of a claimant's impairments "became harmless when the ALJ reached the

9

proper conclusion that [Plaintiff] could not be denied benefits conclusively at Step Two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (same); *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Plaintiff summarily lists other impairments that he contends the ALJ should have found severe, including, left shoulder pain, back pain, hypertension, gastro esophageal reflux disease, and obstructive sleep apnea. Pl.'s Br. at 11-14. Whether plaintiff's "severe" impairments should have also included the additional impairments he alleges is irrelevant because the ALJ found that he had severe impairments and proceeded through the sequential evaluation. Thus, any alleged error at Step Two would not change the ultimate outcome. *See Carpenter*, 537 F.3d at 1266.

Plaintiff's Step Two argument cites to medical records supporting various diagnoses, but fails to prove that he had greater limitations than the ALJ included in the residual functional capacity finding. As such, plaintiff fails to articulate what harm he experienced as a result of the ALJ's allegedly erroneous Step Two finding. Plaintiff must prove actual harm; he cannot simply leave it up to this Court to sort through his arguments to find it. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted); *see Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (holding remand not warranted where claimant was treated fairly and failed to show that he was prejudiced); *see also Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) ("[A]ny error on the part of the ALJ was harmless because there was no indication that the ALJ would have decided differently in the absence of the error.") (citation and internal quotation marks omitted).

Plaintiff lists diagnoses of sleep apnea, gastro esophageal reflux disease, hypertension, and lumbago. Pl.'s Br. at 13. However, plaintiff neglects to cite any

evidence that these impairments produced limitations greater than those the ALJ included in the residual functional capacity finding. The Commissioner submits that the ALJ reasonably accommodated plaintiff's credible limitations and symptoms by limiting him to a range of sedentary work with the ability to stand every hour for one minute, as well as additional postural, environmental, and mental limitations (AR 147). Regardless, because the ALJ proceeded past Step Two in his decision, any alleged error in not finding additional impairments severe was harmless.

### *2. The ALJ Properly Considered Plaintiff's Obesity*

The ALJ explicitly stated that he considered plaintiff's obesity together with all his impairments (AR 144). Despite the ALJ's findings, plaintiff contends that the ALJ failed to consider his obesity in combination with his other impairments. Pl.'s Br. at 14-17. The ALJ found that plaintiff's morbid obesity was a severe impairment, stated he considered obesity under the requirements of SSR 02-1p, and stated that he considered any functional limitations resulting from obesity in addition to plaintiff's other impairments (AR 144). The ALJ also stated that he fully considered plaintiff's obesity in the context of the overall record evidence (AR 145). The court finds that the ALJ did what he claimed to do. *See, e.g., Wilburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010). The ALJ's findings document proper consideration of plaintiff's obesity. *See Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015). Further, the ALJ noted that Matthew Fox, M.D., plaintiff's treating physician, had not imposed limitations resulting from obesity, but rather, had recommended regular exercise and strength training (AR 148, 648). The ALJ also noted that the state agency medical consultants, John May, M.D., and Laura Griffith, D.O., concluded that plaintiff could perform a range of light exertional work despite his impairments (AR 149, 205-207, 218-221). The doctors had considered obesity to be plaintiff's primary impairment and specifically assessed limitations secondary to obesity (AR 203, 205-206, 217-221). Accordingly, the court

finds the ALJ properly considered plaintiff's obesity. *See Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011).

### 3. *The ALJ Did Not Improperly Reject All the Professionals' Opinions*

The ALJ stated that he found plaintiff not disabled "after careful consideration of all of the evidence" (AR 143, *see* AR 144). Plaintiff argues that substantial evidence did not support the ALJ's decision because there was not a medical opinion that supported the ALJ's residual functional capacity finding. Pl.'s Br. at 18-20. "Some medical evidence" must support the ALJ's residual functional capacity assessment. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Nevertheless, a residual functional capacity determination is not a medical opinion, but is an administrative assessment, based on all the evidence of record, of the extent that a claimant's impairments and related symptoms affect his capacity to perform work-related activities on a regular and continuing basis. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2. Thus, it is the ALJ, not a physician, who has the sole responsibility for determining the claimant's residual functional capacity. *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004); 20 C.F.R. § 404.1527(e)(2); SSR 96-5p, 1996 WL 374183, at *2.

#### *(a) Physical Impairment Properly Evaluated*

Plaintiff claims the ALJ should have requested a medical opinion from Dr. Fox. The Commissioner claims that she did request such an opinion from Dr. Fox (Def. Br. at 12), but he declined to provide an opinion. AR 492, 606, 638. Regardless of a lack of opinion from Dr. Fox, his records contain "some" evidence to support the ALJ's residual functional capacity finding. In April 2012, Dr. Fox noted that plaintiff had normal gait and stance (AR 526). In July 2012, Dr. Fox recommended regular exercise and strength training (AR 513). In August 2012, plaintiff told Dr. Fox that he had been more sedentary than normal and wanted to resume normal activity (AR 504). Dr. Fox stated he could perform activities as tolerated, but should elevate his legs when off his feet (AR 506).

In October 2012, plaintiff reported that he had right knee joint pain that was worse with weight bearing, bending, straightening, kneeling, crawling, and squatting, but that he had no difficulty walking (AR 610). Dr. Fox noted normal gait and stance (AR 611). Dr. Fox made similar findings regarding gait and station in January 2013, even though plaintiff alleged difficulty walking on the right knee (AR 635, 645-646). Other records further support this conclusion. In March 2013, Dr. Fabiano found that plaintiff had full range of motion and no weakness in the left shoulder (AR 653). X-rays of left shoulder showed no osteoarthritis abnormality, while right knee x-ray showed only narrowing of the knee joint space (AR 653-654). The court finds this evidence supports the ALJ's finding that plaintiff could perform sedentary work that allowed him to stand for one minute every hour, and subject to postural and environmental limitations (AR 147).

### *(b) Mental Impairment Properly Evaluated*

As for mental functioning, Dr. Fox noted that plaintiff exhibited normal cognitive functioning and thought processes in October 2012, and January 2013 (AR 611). In November 2012, Kevin Krumvieda, Ph.D., noted plaintiff's mood was good and he was relaxed (AR 623). Dr. Krumvieda stated that plaintiff's ability to understand simple instructions and procedures appeared "fairly intact," as was attention and concentration (AR 624). Due to plaintiff's self-report of not wanting to socialize, Dr. Krumvieda concluded that his ability to interact with others was markedly limited (AR 624). Finally, Dr. Krumvieda opined that plaintiff's ability to use good judgment and respond appropriately to changes in the workplace appears markedly limited (AR 642). The court finds this evidence supports the ALJ's finding that plaintiff could perform simple, routine, and repetitive work not requiring any significant judgment, new circumstances, or public interaction (AR 147).

The ALJ also properly considered, but did not adopt, the opinions of the state agency medical consultants, who reviewed plaintiff's records and concluded that he could perform a reduced range of light work limited to mildly complex work (AR 149-150,

13

205-209, 218-223). Ultimately, the ALJ concluded that new evidence indicated greater degree of limitation than the state agency medical consultants opined (AR 149-150). Nevertheless, the ALJ properly considered their opinions. 20 C.F.R. § 404.1527(e)(2)(i); *see Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the state agency medical consultant] along with the medical evidence as a whole."). Because there is some medical evidence, actually substantial medical evidence in the record supporting the ALJ's residual functional capacity finding, The ALJ's decision is affirmed in this regard.

### *4. The ALJ Properly Concluded That Plaintiff's Subjective Complaints Were Not Fully Credible*

Plaintiff argues the ALJ failed to properly consider his subjective allegations and third-party claims of plaintiff's mother. Plaintiff contends the ALJ discredited those allegations because he incorrectly relied on the fact that his allegations as to limitations are inconsistent with objective medical evidence in the record. He further contends that if his subjective allegations had been afforded the proper weight, a finding of disability would have been mandated. The court finds that the ALJ properly analyzed plaintiff's subjective allegations as to his limitations, as well as the other record evidence, including the medical evidence, which supports discounting plaintiff's and his mother's allegations.

#### *(a) Applicable Standards*

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams*, 393 F.3d at 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the

reasons for discrediting the complaints." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

To determine a claimant's credibility, the ALJ must consider:

(1)   the claimant's daily activities;

(2)   the duration, intensity, and frequency of pain;

(3)   the precipitating and aggravating factors;

(4)   the dosage, effectiveness, and side effects of medication; and

(5)   any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). An ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010).

The ALJ is not required "'to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints.'" *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (quoting *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000)). If an ALJ discounts a claimant's subjective complaints, he or she is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford v. Astrue*, 518 F.3d 979, 982 (quoting *Lewis*, 353 F.3d at 647). When an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the court should normally defer to the ALJ's credibility determination. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). It is not the court's role to re-weigh the evidence. *See* 42 U.S.C. § 405(g); *see also Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) ("[I]f, after reviewing the record, [the Court] find[s] that it is possible to draw two inconsistent positions from the evidence, and one of those positions represents the [Commissioner's] findings, [the

Court] must affirm the decision of the Commissioner.") (citations and quotations omitted).

### *(b) Analysis*

After a thorough analysis of the entire record, the ALJ concluded that plaintiff's subjective complaints were not fully credible (AR 147-151). The ALJ did not totally discount plaintiff's complaints, as he found that plaintiff was limited to a reduced range of sedentary exertional work (AR 147). However, the real issue is the extent of the limitations resulting from the impairments. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991). The fact that a claimant may have difficulties working does not mandate a finding of disability. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). The ALJ properly concluded that plaintiff's subjective complaints were inconsistent with objective medical evidence and his receipt of unemployment benefits.

Plaintiff argues that the ALJ erred in his credibility analysis because he did not consider the factors set forth in *Polaski v. Heckler*, 751 F.2d 943, 949 (8th Cir. 1984). Pl.'s Br. at 20-26. Plaintiff urges his own statements of symptoms and limitations as evidence establishing his symptoms and limitations. Pl.'s Br. at 21-22. Plaintiff further argues that the ALJ placed too much emphasis on the objective medical findings and his receipt of unemployment benefits. Pl.'s Br. at 22-23. Lastly, plaintiff argues that his mother's statements bolster his own statements and the ALJ should have given his mother's statements more weight. Pl.'s Br. at 24-25.

When determining residual functional capacity, the ALJ must evaluate the claimant's credibility regarding his subjective complaints. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). In doing so, the ALJ must consider objective medical evidence and any evidence relating to such factors as a claimant's daily activities; duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski*, 751 F.2d at 948. But the ALJ does not have to discuss each *Polaski* factor as long as the

ALJ recognizes and considers the *Polaski* analytical framework. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). The ALJ did so here, noting that the credibility analysis is a two-step process (AR 147-148). Credibility of a claimant's subjective testimony is primarily for the ALJ, not the reviewing court, to decide. *Pearsall*, 274 F.3d at 1218.

The ALJ properly determined that plaintiff's receipt of unemployment benefits weighed against his credibility (AR 149). The ALJ correctly observed that for plaintiff to receive unemployment benefits, plaintiff had to certify to the state of Iowa that he was ready, willing, and able to work (AR 25). *See* Iowa Code § 96.4(3) ("[t]he individual is able to work, is available for work and is earnestly and actively seeking work."). Because such an application necessarily indicates an ability to work, it is evidence that may be considered in the ALJ's credibility finding. *See* 20 C.F.R. § 404.1512(b)(3); *Paschal v. Astrue*, 372 F. App'x. 687, 688 (8th Cir. 2010); *Kriebaum v. Astrue*, 280 F. App'x. 555, 557-58 (8th Cir. 2008); *see also Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) ("[A]cceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability."); *Johnson v. Chater*, 108 F.3d 178, 180-81 (8th Cir. 1997) ("Applying for unemployment benefits 'may be some evidence, though not conclusive, to negate' a claim of disability.") (quoting *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991)).

Plaintiff alleges that his disability onset date is the same date that his employer terminated him from his fourteen-year job as an automobile detailer (AR 325). The vocational expert stated that plaintiff described performing the job at the heavy exertional level (AR 388). Specifically, plaintiff reported that his job as an automobile detailer required him to lift one hundred pounds or more maximum, lift twenty-five pounds frequently, walk two hours, stand four hours, and sit one hour (AR 326-327). Thus, plaintiff went from performing a heavy occupation for fourteen years up until April 3, 2012, to claiming an inability to perform even sedentary work that same day, with no

evidence of any significant deterioration in his condition. The ALJ was justified in finding this not credible. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). After being terminated, plaintiff reported that he received unemployment benefits and had applied for 68 other jobs (AR 291-292, 622). He stated that he had received no replies to any of his applications (AR 622). However, as the ALJ noted, a claimant is not disabled if his residual functional capacity permits him to perform work but he remains unemployed because of his inability to get work, the hiring practices of employers, or the unavailability of job openings. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R.§ 404.1566(c).

The ALJ also noted that there were inconsistencies between plaintiff's complaints and the objective medical evidence that weighed against his credibility (AR 148). An ALJ may properly discount the subjective complaints if inconsistencies exist in the record as a whole. *See Wildman*, 596 F.3d at 968; *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (citing *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002)); 20 C.F.R. § 404.1529(c). The Eighth Circuit Court of Appeals holds that the absence of an objective medical basis to support the degree of a claimant's subjective complaints is an important factor in evaluating the credibility of the claimant's testimony and complaints. *See Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010); *Eichelberger v. Barnhart*, 390 F.3d 584, 589-90 (8th Cir. 2004).

The ALJ discussed plaintiff's impairments and medical history (AR 144-145,148) before concluding that the evidence did not document impairments that would be expected to cause the degree of symptoms plaintiff alleged (AR 149). As discussed above, the ALJ considered plaintiff's conservative treatment, x-ray evidence of osteoarthritis in the knee, full range of motion in the joints, and normal cognitive functioning and thought processes (AR 145, 148). The ALJ's conclusion that the objective evidence does not support plaintiff's complaints is well supported by the medical record.

The ALJ also discussed plaintiff's activities of daily living and concluded that he had only mild restrictions (AR 146). The ALJ noted that plaintiff provided his own

18

personal cares, made his own breakfast and lunch, did more cooking, watched television, performed household chores, shopped for food every week, drove an automobile, and filled out job applications (AR 146, 623). In addition, plaintiff reported that he played video games, drew pictures, and put together models. Plaintiff's performance of these activities support the ALJ's finding. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (The ALJ's reasons for discounting plaintiff's credibility were supported by substantial evidence when, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, take care of his dogs, use a computer, drive with a neck brace and shop for groceries with the use of an electric cart.").

Plaintiff also cites, at length, to his mother's statements and argues that the ALJ's discussion of this lay evidence was improper. Pl's Br. at 24-25. However, the ALJ provided valid reasons for discounting these statements (AR 150). The ALJ noted that the individual's statements did not comply with medically accepted standards (AR 150). *See Ash v. Astrue*, No. 2:10CV00043 AGF, 2011 WL 2936348, at *12 (E.D.Mo. July 19, 2011) (unpublished) (third party witnesses not medically trained). Moreover, the statements came from plaintiff's mother, an individual who was not a disinterested third party (AR 150). *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) ("Corroborating testimony of an individual living with a claimant may be discounted by the ALJ, as that person has a financial interest in the outcome of the case.") (citing *Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988)).

Finally, the same evidence that discredited plaintiff's allegations of disabling symptoms would also discredit the cumulative lay testimony. *See Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001). Accordingly, plaintiff has failed to show any error in evaluation of his mother's statement, much less reversible error.

The ALJ gave legitimate reasons for finding that plaintiff's allegations, and those of his mother, were not entirely credible. This finding is supported by substantial

evidence in the record as a whole. The court affirms the ALJ's decision that plaintiff and his mother were not credible to the extent he claimed he was disabled. *See, e.g., Halverson*, 600 F.3d at 931-33; *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996).

## VI. CONCLUSION

For the reasons set forth herein, and without minimizing the seriousness of plaintiff's impairments, the court finds that the Commissioner's determination that plaintiff was not disabled is **affirmed**. Judgment shall be entered against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED** this 30th day of March, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa